LINDA PISA-DE RUBERTIS,
                  **Plaintiff,**

v.

CAROLYN W. COLVIN,
**Acting Commissioner of Social Security**
**Administration,**
                  **Defendant**.

_____/

## ORDER

THIS MATTER is before the Court on the Plaintiff's Motion for Summary Judgment and

Memorandum of Law in Support Thereof (DE#22, 11/18/2016) and the Defendant's Motion for

Summary Judgment with Supporting Memorandum of Law and Response to Plaintiff's Motion

for Summary Judgment (DE#25, 12/19/2016). The plaintiff seeks reversal of the Commissioner

of Social Security's decision to deny the plaintiff eligibility for Social Security Disability Income

Benefits under Title II of the Social Security Act. In the alternative, the plaintiff asks for a

remand for further administrative proceedings. The complaint was filed pursuant to the Social

Security Act, 42 U.S.C. §405(g) (hereinafter "Act"), and is properly before the Court for judicial

review of a final decision of the Social Security Administration (hereinafter "SSA"). The parties

consented to Magistrate Judge jurisdiction, (DE# 18, 9/19/2016), and this matter was referred to

the undersigned for final disposition pursuant to Judge Moreno's Order dated September 27,

2016 (DE#21, 9/28/2016). Having carefully considered the filings and applicable law, the

undersigned enters the following Order.

## PROCEDURAL HISTORY

On May 15, 2013, the plaintiff applied for disability insurance benefits under Title II of the Social Security Act, alleging disability as of April 19, 2013. (Tr. 47, 178).[1] On September 10, 2013, the Agency denied the plaintiff's application. (Tr. 47, 112- 15). The plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on September 27, 2013. (Tr. 118).

On March 13, 2015, a hearing was held before the ALJ. (Tr. 47, 61-102). In a hearing decision dated July 21, 2015, the ALJ found that the plaintiff was not disabled within the meaning of the Act. (Tr. 56). On August 28, 2014, the plaintiff submitted a request for review of the ALJ's decision. (Tr. 39). The ALJ's decision became final when the Appeals Council denied the plaintiff's request for review on February 8, 2016. (Tr. 7-12). Judicial review of the Commissioner's final decision is permitted by Section 405(g) of the Act.

## FACTS

### I. Plaintiff's Background

The plaintiff was born on June 10, 1952, and is currently 62 years old with a GED. (Tr. 68, 207). The plaintiff is a citizen of the United States. (Tr. 178). The plaintiff alleges her disability began on April 19, 2013. (Tr. 69, 206). The plaintiff also alleges that she suffers from irritable bowel syndrome ("IBS"),[2] severe back pain, anxiety, major depression, hypertension,

---

[1] All references to "Tr." refer to the transcript of the SSA record filed on September 19, 2016. See Social Security Transcripts (DE# 17, 9/19/16). Moreover, the page numbers refer to those found on the lower right hand corner of each page of the transcript, as opposed to those assigned by the courts electronic docketing system or any other page numbers that may appear.

[2] IBS is a common disorder that affects the large intestine. IBS commonly causes cramping, abdominal pain, bloating, gas, diarrhea and constipation. Definition: IBS, MAYOCLINIC.COM, http://www.mayoclinic.org/diseases-conditions/irritable-bowel-syndrome/basics/definition/CON-20024578 (last visited June 29, 2017).

and a heart murmur. (Tr. 257). At the time of the plaintiff's alleged onset date, the plaintiff was 60 years old. (Tr. 69). The plaintiff previously worked as a salesperson for Westchester Jewelry. (Tr. 70, 207). In addition, the plaintiff did some buying for the company, as well as computer work. (Tr. 70, 226). On the plaintiff's Work History and Disability Reports, both dated May 5, 2013, the plaintiff stated that she worked five days a week, eight hours a day, earning two-hundred-fifty dollars per week. (Tr. 199). The records provided indicate that the plaintiff did not work after the alleged onset disability date. (Tr. 69). The plaintiff is currently retired and receiving two-hundred fifty-five dollars a month in Social Security Retirement Benefits. (Tr. 72-73).

The plaintiff described her daily activities as relaxing and watching television. (Tr. 85). The plaintiff stated that her husband does all the chores around the household, including grocery shopping, but occasionally, she joins him. Id. The plaintiff has the ability to care for her own personal hygiene and groom herself independently on a daily basis. (Tr. 215, 493). The plaintiff has the ability to travel outside of her house by either walking or driving. (Tr. 216). In addition, the plaintiff frequently travels back and forth from New York to Florida. (Tr. 88).

II. Plaintiff's Treating Physicians and Relevant Medical Evidence

The plaintiff was examined by several doctors during and after the alleged onset date of disability; including: Dr. Eugenio Menendez,[3] primary treating physician (Tr. 65, 450); Dr. Jeffrey Shapiro, internist and cardiologist (Tr. 67, 550-69); Dr. Mark Weinberger, psychologist (Tr. 437-40); Dr. Mauricio Silva, internist (Tr. 444); and Dr. Arturo Lopez, gastroenterologist (Tr. 448).

_____

[3]Dr. Menendez is a board certified internist. (Tr. 51).

A. Dr. Eugenio Menendez

In a letter dated September 23, 2013, Dr. Menendez stated that he treated the plaintiff for five years. (Tr. 486). Dr. Menendez also stated that the plaintiff was significantly affected by daily severe abdominal pain from IBS, and unable to work due to daily, severe, disabling symptoms from her disorder. Id. According to a Multiple Impairment Questionnaire signed and dated October 18, 2013, Dr. Menendez began treating the plaintiff in August 2008.[4] (Tr. 450-457). Dr. Menendez diagnosed the plaintiff with IBS and Lumbar Degenerate Disk Disease. (Tr. 450).

On August 5, 2011, the plaintiff underwent an MRI of the Lumbar Spine without contrast. (Tr. 311, 409). The plaintiff's MRI impression revealed mild levoscoliosis of the lumbar spine. Id. The MRI also revealed a minor disc bulge at L5-S1, a degenerate change of apophyseal joints L4-5 and L5-S1, no disc herniation, and significant canal encroachment or significant foraminal stenosis at the level of the lumbar spine. Id. The MRI revealed the L1-2, L2-3, and L3-4 disc spaces were unremarkable. Id. Additionally, the MRI revealed a mild degenerative change of the left SI joint. Id. The SI joints were otherwise unremarkable. Id. Lastly, the MRI revealed mild to moderate atrophy of paravertebral muscles, and a fibroid uterus with nonspecific free fluid in the cul-de-sac. Id.

On November 1, 2011, Dr. Menendez noted that the plaintiff was exercising and denied chest and back pain, as well as nausea. (Tr. 388-89). The plaintiff stated she was experiencing abdominal pain. (Tr. 389). A physical examination of the plaintiff revealed that she was in no

---

[4]In Plaintiff's Disability Report, the plaintiff stated that she had been seeing Dr. Menendez since 2007. (Tr. 209).

acute distress, had no heart murmur and was alert and oriented times three. Id. It is unclear whether her abdominal area was tender. Id. Following this appointment, the plaintiff was diagnosed with a right indirect inguinal hernia and underwent a hernia repair. (Tr. 315).

On June 5, 2012, Dr. Menendez noted that the plaintiff was exercising and denied abdominal pain, constipation, diarrhea, and nausea. (Tr. 379-80). The plaintiff stated that she was experiencing chest and back pain. (Tr. 380). A physical examination of the plaintiff revealed that she was in no acute distress, had no heart murmur or abdominal tenderness and was alert and oriented times three. Id.

On December 10, 2012, Dr. Menendez noted that the plaintiff was exercising and denied chest, abdominal, and back pain, as well as constipation, diarrhea, and nausea. (Tr. 376-77). A physical examination of the plaintiff revealed that she was in no acute distress, had no heart murmur or abdominal tenderness and was alert and oriented times three. (Tr. 377).

On January 22, 2013, Dr. Menendez noted that the plaintiff was exercising and denied abdominal and back pain, as well as constipation, diarrhea, and nausea. (Tr. 373-74). The plaintiff stated that she was experiencing chest pain. (Tr. 373). A physical examination of the plaintiff revealed that she was in no acute distress, had no heart murmur or abdominal tenderness and was alert and oriented times three. (Tr. 374).

On March 15, 2013, Dr. Menendez noted that the plaintiff was exercising and denied chest, abdominal, and back pain, as well as constipation, diarrhea, and nausea. (Tr. 369-70). A physical examination of the plaintiff revealed that she was in no acute distress, had no heart murmur and was alert and oriented times three. (Tr. 370-71). In addition, the examination revealed that the plaintiff had no right lower quadrant chronic abdominal tenderness. (Tr. 370).

On April 17, 2013, Dr. Menendez noted that the plaintiff was exercising and denied chest and back pain. (Tr. 366-67). The plaintiff stated that she was experiencing abdominal pain. (Tr. 367). A physical examination of the plaintiff revealed that she was in no acute distress, had no heart murmur and was alert and oriented times three. (Tr. 367-68). In addition, the examination revealed that the plaintiff had no right lower quadrant chronic abdominal tenderness. (Tr. 368).

On May 21, 2013, Dr. Menendez noted that the plaintiff was exercising and denied chest and back pain. (Tr. 363-34). The plaintiff stated that she was experiencing abdominal pain. (Tr. 364). A physical examination of the plaintiff revealed that she was in no acute distress, had no heart murmur and was alert and oriented times three. ( Tr. 364-65). In addition, the examination revealed that the plaintiff had no right lower quadrant chronic abdominal tenderness. Id.

On October 18, 2013, Dr. Menendez filled out a Multiple Impairment Questionnaire. (Tr. 450-57). Dr. Menendez diagnosed the plaintiff with: (1) IBS and (2) Lumbar Degenerative Disk Disease. (Tr. 450). Dr. Menendez stated that the plaintiff had not been able to return to work due to daily chronic abdominal and back pain. Id. Dr. Menendez listed: (1) daily chronic abdominal pain, (2) constipation, (3) bloating, (4) nausea, and (5) back pain as the plaintiff's symptoms. (Tr. 451). Dr. Menendez indicated that the plaintiff's symptoms would likely increase if she were placed in a competitive work environment, and that the plaintiff could not do a full time competitive job that required activity on a sustained basis. (Tr. 454-55). Dr. Menendez indicated that the plaintiff could only sit, stand, or walk for a total of zero to one hours in an eight-hour day. (Tr. 452). Dr. Menendez further indicated that the plaintiff could occasionally lift 0-5 lbs., could frequently carry 0-5 lbs. and occasionally carry 5-10 lbs., but nothing more. (Tr. 453). Dr. Menendez also stated that the plaintiff constantly experiences pain or fatigue severe enough to

interfere with the her attention and concentration. (Tr. 455). In addition, Dr. Menendez stated that no emotional factors contributed to the severity of the plaintiff's symptoms and functional limitations, and that the plaintiff could tolerate a moderate amount of work related stress. Id.

On November 5, 2014, the plaintiff again visited Dr. Menendez. (Tr. 500). Dr. Menendez noted that the plaintiff was exercising and denied chest and back pain. (Tr. 500-01). The plaintiff stated that she was experiencing abdominal pain. (Tr. 501). A physical examination of the plaintiff revealed that she had no heart murmur and was alert and oriented times three. (Tr. 502). In addition, the examination revealed that the plaintiff's lower right abdominal quadrant was not tender. Id.

During a visit dated January 28, 2015, Dr. Menendez noted that the plaintiff was exercising and denied chest and back pain (Tr. 504-05). The plaintiff stated that she was experiencing abdominal pain. (Tr. 505). A physical examination of the plaintiff revealed that she was in no acute distress, had no heart murmur and was alert and oriented times three. (Tr. 505-06). In addition, the examination revealed that the plaintiff's lower right abdominal quadrant was not tender. Id.

B. Dr. Jeffrey Shapiro

The plaintiff first saw Dr. Shapiro in 2007. (Tr. 210). In progress notes dated September 26, 2011, Dr. Shapiro noted that the plaintiff denied chest pain, back pain, depression, anxiety, and fatigue, as well as constipation and diarrhea. (Tr. 564-65). Dr. Shapiro also noted that the plaintiff was not exercising, and was experiencing abdominal pain in her right lower quadrant. (Tr. 565-66). A physical examination of the plaintiff revealed that she was in no acute distress, had no heart murmur and was alert and oriented. (Tr. 566). In addition, the examination revealed

7

that the plaintiff's abdomen was soft and non-tender, and was demonstrating normal bowel sounds. Id.

In progress notes dated September 29, 2011, Dr. Shapiro noted that the plaintiff denied chest pain, back pain, depression, anxiety, and fatigue, as well as constipation and diarrhea. (Tr. 562-63). Dr. Shapiro also noted that the plaintiff was not exercising, and was experiencing abdominal pain. Id. A physical examination of the plaintiff revealed that she was in no acute distress, had no heart murmur and was alert and oriented. (Tr. 563). In addition, the examination revealed that the plaintiff's abdomen was soft and non-tender, and was demonstrating normal bowel sounds. Id.

In progress notes dated May 10, 2013, Dr. Shapiro noted that the plaintiff denied chest pain, back pain, and fatigue, as well as constipation and diarrhea. (Tr. 559-61). Dr. Shapiro also noted that the plaintiff was not exercising, and was experiencing right lower quadrant abdominal pain. Id. In addition, Dr. Shapiro noted that the plaintiff was experiencing mild anxiety and on and off mood swings. (Tr. 561). A physical examination of the plaintiff revealed that she was in no acute distress, had no heart murmur and was alert and oriented. (Tr. 559). In addition, the examination revealed that the plaintiff's abdomen was soft and non-tender, and was demonstrating normal  bowel sounds. Id.

In progress notes dated May 16, 2013, Dr. Shapiro noted that the plaintiff denied chest pain, back pain, abdominal pain, depression, anxiety, and fatigue, as well as constipation and diarrhea. (Tr. 556-57). Dr. Shapiro also noted that the plaintiff was not exercising. (Tr. 556). A physical examination of the plaintiff revealed that she was in no acute distress, had no heart murmur and was alert and oriented. Id. In addition, the examination revealed that the plaintiff's

abdomen was soft and non-tender, and was demonstrating normal bowel sounds. Id.

In progress notes dated December 21, 2013, Dr. Shapiro noted that the plaintiff denied back pain, depression, anxiety, and fatigue. (Tr. 553-55). Dr. Shapiro also noted that the plaintiff was not exercising, and was experiencing constant abdominal pain, as well as chronic constipation and diarrhea. (Tr. 553-54). Dr. Shapiro further noted that the plaintiff was experiencing chest pain. (Tr. 554). A physical examination of the plaintiff revealed that the plaintiff was in no acute distress and was alert and oriented. (Tr. 553). In addition, the examination revealed that the plaintiff had a heart murmur, her abdomen was soft and non-tender, and her abdomen was demonstrating normal bowel sounds. Id.

In progress notes dated October 23, 2014, Dr. Shapiro noted that the plaintiff denied back pain, depression, anxiety, and fatigue. (Tr. 550-52). Dr. Shapiro also noted that the plaintiff was not exercising, and was experiencing colicky abdominal pain, as well as constipation alternating with diarrhea. (Tr. 550-51). Dr. Shapiro further noted that the plaintiff was experiencing midsternal chest pain associated with food intake. (Tr. 551). A physical examination of the plaintiff revealed that she was in no acute distress, had no heart murmur and was alert and oriented. (Tr. 550). In addition, the examination revealed that plaintiff's abdomen was soft and non-tender and was demonstrating normal bowel sounds. Id.

C. Dr. Mark Weinberger

Dr. Weinberger completed a Psychiatric Evaluation of the plaintiff on August 9, 2013. (Tr. 437). In the report, Dr. Weinberger indicated that the plaintiff appeared to be dressed appropriately and well groomed. (Tr. 438). The plaintiff's motor behavior was normal and her eye contact was appropriate. Id. The plaintiff's speech was both fluent and clear. Id. The

plaintiff's expressive language and receptive language were both adequate. Id. The plaintiff's thought processes was coherent and goal directed with no evidence of delusions, hallucination, or disordered thinking. Id. The plaintiff was oriented times three and her attention and concentration were intact. (Tr. 438-39). The plaintiff was able to perform counting and simple calculations. Id. The plaintiff's recent and remote memory skills were mildly impaired. Id. The plaintiff's insight and judgment were both good. Id. The plaintiff reported she dresses, bathes, and grooms herself, but her husband cooks, cleans, and shops. Id. Additionally, the plaintiff reported she is able to manage her own money. Id. The plaintiff reportedly drives and does not take public transportation. Id. Furthermore, the plaintiff reported having friends and good family relationships. Id. Lastly, the plaintiff reported having no current hobbies or interests, and spending most of her days at home. Id. Dr. Weinberger indicated that the plaintiff appeared to be capable of following and understanding simple directions and instructions. Id. Additionally, Dr. Weinberger indicated that the plaintiff appeared to be capable of: performing simple tasks independently, maintaining attention and concentration, maintaining a regular schedule, learning new tasks, performing complex tasks independently, making appropriate decisions, relating adequately with others, and appropriately dealing with stress. Id. Lastly, Dr. Weinberger indicated that the plaintiff's condition did "not appear to be significant enough to interfere with the [plaintiff]'s ability to function on a daily basis." (Tr. 439-40). Dr. Weinberger diagnosed the plaintiff with (1) adjustment disorder with depressed mood, (2) IBS, and (3) pain. (Tr. 439-40). Dr. Weinberger recommended individual psychological therapy, and opined that the prognosis was good. (Tr. 440).

D. Dr. Mauricio Silva

On August 21, 2012, at the request of the SSA, Dr. Silva performed an Internal Medicine Examination of the plaintiff. (Tr. 52, 444). The plaintiff's chief complaints were IBS and low back pain. Id. In the report, Dr. Silva, noted that the plaintiff appeared to be in no acute distress. (Tr. 446). Additionally, Dr. Silva noted that the plaintiff could walk on heels and toes without difficulty. Id. Dr. Silva noted that the exam was limited because the plaintiff said she could not perform certain movements because they would precipitate her pain. Id. The plaintiff did not use any assistive devices, and needed no help changing for exam or getting on and off exam table. Id. The plaintiff appeared to have a regular heart rhythm and no heart murmur. Id. There appeared to be a mild extension of the plaintiff's abdominal wall which was more pronounced on the right side than the left. Id. The plaintiff's bowel sounds appeared to be normal, and her abdomen appeared to be soft and non-tender. Id. The plaintiff's cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. Id. The plaintiff appeared to have a full range of motion of her shoulders, elbows, forearms, and wrists bilaterally. Additionally, the plaintiff appeared to have a full range of motion of her hips, knees, and ankles bilaterally. (Tr. 446-47). The plaintiff did not want to perform lumbar spine movements because she said it may precipitate her pain. (Tr. 446). In a screening colonoscopy, the plaintiff was incidentally found to have a benign polyp. (Tr. 444). Dr. Silva diagnosed the plaintiff with (1) IBS by history and (2) low back pain secondary to degenerate changes. (Tr. 447). Dr. Silva opined the prognosis was good and noted no limitations on this exam. Id.

E. Dr. Arturo Lopez

On September 26, 2013, the plaintiff was evaluated by Dr. Lopez for IBS with mixed

constipation and diarrhea. (Tr. 484). An examination of the abdomen revealed that it was soft and tender. Id. Dr. Lopez diagnosed the plaintiff with IBS. In a letter dated the same day, Dr. Lopez stated that the plaintiff had been under his care for four years. (Tr. 448). Dr. Lopez also stated that the plaintiff had been significantly affected by daily severe abdominal pain from irritable bowel syndrome, and had not been able to work due to daily, severe, disabling symptoms from her disorder. Id.

On October 9, 2013, the plaintiff was evaluated by Dr. Lopez for bloating and pressure in her abdomen. (Tr. 482).   An examination of the abdomen revealed that it was soft and tender. Id. On December 4, 2013, Dr. Lopez filled out an Impairment Questionnaire relating to Gastrointestinal Disorders. (Tr. 467-72). Dr. Lopez stated that the plaintiff's first date of treatment was September 29, 2013, and the date of her most recent exam was October 9, 2013. Id. Dr. Lopez indicated that he had only treated the plaintiff twice. Id. Dr. Lopez diagnosed the patient with (1) reflux disease, (2) IBS, (3) constipation, and (4) diarrhea. Id. Dr. Lopez opined that the prognosis was good. Id. Dr. Lopez identified abdominal pain and cramps as his only clinical findings. (Tr. 468). Dr. Lopez did not identify any laboratory and diagnostic test results which demonstrated or supported his diagnosis. Id. Additionally, Dr. Lopez did not list any primary symptoms that the plaintiff may have had. Id. Dr. Lopez stated that the plaintiff's symptoms and functional limitations were reasonably consistent with the plaintiff's physical or emotional impairments as described in his evaluation. Id. When asked to address the following factors relating to the plaintiff's pain: (1) the nature of the pain, (2) the location of the pain, (3) frequency of the pain, (4) the precipitating factors leading to pain, (5) the severity of the pain, and (6) other factor's relating to the plaintiff's pain, Dr. Lopez did not address any. Id. Dr. Lopez left

the remainder of the Impairment Questionnaire blank or stated that he was unable to determine the answer.[5] (Tr. 470-471).

On December 17, 2013, the plaintiff visited Dr. Lopez once more. (Tr. 479). A physical examination revealed that the plaintiff's abdomen was soft and tender on the right lower quadrant. Id. In addition, Dr. Lopez diagnosed the plaintiff with a possible hernia. (Tr. 480).

III. Disability Examiner

On September 9, 2013, A. Toliver (hereinafter "Toliver"), a disability examiner,[6] assessed the plaintiff's residual functional capacity. (Tr. 108-110). While assessing the plaintiff's residual functional capacity, Toliver indicated that the plaintiff had exertional limitations. Id. Toliver stated that the plaintiff could occasionally lift or carry twenty pounds, and frequently lift or carry ten pounds. Id. Additionally, Toliver stated that the plaintiff could stand, walk, or sit, with normal breaks, for about six hours in an eight hour work day. Id. Toliver further stated that the

_____

[5]Dr. Lopez stated that he was unable to determine the answers as to: (1) what degree the plaintiff can tolerate work stress; (2) the plaintiff's residual functional capacity if she were placed in a normal competitive five day a week work environment on a sustained basis; and (3) the amount of weight the plaintiff can lift. (Tr. 470-71).

Dr. Lopez did not answer the questions listed below. (1) Are your patient's impairments likely to produce "good days" and "bad days"? (2) Is your patient prone to frequent infections? (3) Does your patient need a job that permits ready access to a restroom? (4) In your best medical opinion, what is the earliest date that the description of symptoms and limitations in the questionnaire applies? (Tr. 471-72).

[6]In their filings, the parties refer to Toliver as a "single decision maker." (Pl. Motion for Summ. J. at 9 ); (Def. Motion for Summ. J. at 11). "In the single decision maker model, the decision maker will make the disability determination and may also determine whether the other conditions for entitlement to benefits based on disability are met. The decision maker will make the disability determination after any appropriate consultation with a medical or psychological consultant. ... the decision maker will make every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment pursuant to [the] existing procedures." 20 C.F.R. § 404.906(b)(2).

plaintiff had postural limitations. Id. Toliver also stated that the plaintiff could occasionally climb ramps and stairs, and occasionally stoop, kneel, crouch, and crawl. Id. Additionally, Toliver stated that the plaintiff could frequently balance, and never climb ladders, ropes, or scaffolds. Id. Lastly, Toliver stated that the plaintiff did not have manipulative, visual, communicative, or environmental limitations. (Tr. 109).

Next, Toliver assessed the plaintiff's vocational factors. Id. Toliver stated that the plaintiff has the residual functional capacity to perform her past relevant work. Toliver opined that the evidence showed that the plaintiff had some limitations in the performance of certain work activities, however, these limitations would not prevent the plaintiff from performing her past relevant work in sales. Id. Toliver found that the plaintiff was not disabled. (Tr. 110).

IV. The Vocational Expert Testimony

The Vocational Expert, (hereinafter "VE"), Linda Stein, testified at the plaintiff's hearing before an ALJ. (Tr. 62, 68). At the hearing, the plaintiff testified that she performed retail buying and selling ninety percent of the time, and wholesale buying and selling the remaining ten percent of the time. (Tr. 74-75). The VE indicated that the information given by the plaintiff would produce two different DOT numbers. (Tr. 75). The plaintiff's job as a retail jewelry buyer and seller (279.357-058) was an SVP[7] of 5 and an exertional level of light. (Tr. 76). The plaintiff's job as a wholesale jewelry buyer and seller (279.357-018) was an SVP of 6 and an exertional level of light. Id. The VE testified that she believed there were some transferable skills

---

[7] The SVP is known as the specific vocational preparation, it is the amount of time required by a typical worker to learn the techniques, acquire the information, and develop the abilities needed for average performance in a specific work situation. 20 C.F.R. § 656.3.

that were taken both from the record she reviewed,[8] as well as her own knowledge of the type of position it was. (Tr. 76-77). The VE identified those transferable skills as: computer skills, advertising skills, customer service skills, buying skills and selling skills, as well as persuasive skills, closing skills, interpersonal skills, inventory skills, and billing skills. (Tr. 78).

The ALJ posed a hypothetical to the VE with a person of the same age, education, and work history as the plaintiff. (Tr. 91). The hypothetical person was capable of full range of light exertional work. Id. The VE testified that under the ALJ's hypothetical, the plaintiff could perform her past work as a jewelry retail and wholesale buyer and seller. Id.

The ALJ posed a second hypothetical to the VE with a person of the same age, education, and work history as the plaintiff. Id. The hypothetical person was now capable of full range of sedentary exertional work. Id. The VE testified that under the ALJ's second hypothetical, the plaintiff's past relevant work would be precluded. Id. The VE opined that the position of a sales representative was a sedentary position that would be transferable to the plaintiff. (Tr. 92). The VE felt that the skills transferred to that position with little vocational adjustment. Id.

Thereafter, the ALJ asked the VE a number of hypothetical questions to determine the plaintiff's ability to work. (Tr. 92). The ALJ began by stating the following:

> Q: . . . . Now, if I take the hypothetical that I just gave you at sedentary exertion and I add a mental limitation, due to the depressive symptoms of being limited to simple unskilled tasks, if I add that mental limitation of being limited to simple unskilled tasks I am assuming that is going to eliminate the possibility of you identifying any positions that skills would transfer to. That is correct I assume?

(Tr. 92-93).

---

[8]The VE testified that she reviewed Section E of the record. (Tr. 77-78).

In response to the ALJ's hypothetical questioning, the VE testified, "Yeah, they would not be transferable to an unskilled level." (Tr. 93).

The ALJ then asked the VE:

> Q:  . . . . Let's take the mental limitation out again, let's forget about that. But if we do add a limitation that basically because of the frequency of bathroom breaks the individual is going to be off task 15 percent of the workday, would you be able to identify jobs with that limitation?

Id.

In response to the ALJ's hypothetical questioning, the VE testified, "No, because a telephone salesperson needs to be at the telephone. So, 15 percent, in my opinion, would preclude the full-time work in that occupation." Id.

Following the response by the VE to the ALJ, the VE was examined and questioned by the plaintiff's attorney at the time, Ms. Sanni-Adigun. The following interaction transpired between the VE and the plaintiff's attorney:

> Attorney: . . . . Now, if we looked at the Judge's first hypothetical, as far as postural limitations are concerned the individual is reduced to no pushing or pulling and no stooping or kneeling, and then the remaining posturals would be at occasional, would they be able to perform light work?

> VE: ... So, based on the *Selected Characteristics of Occuptions*, for climbing, balancing, stooping, kneeling, crouching, and crawling they are all considered not present for that position.

The ALJ then asked the VE:

> Q:  . . . . So, the answer would still be that the past work could be done?

> VE: That is still stands. Given those limitations.

Attorney: Now, if the individual is reduced to no more than lifting and carrying of five pounds at the light level regarding standing and walking, using the Judge's hypothetical, would that have any affect of the light occupational –

The ALJ said:

> Q: So, I understand the question. You're saying that the stand/walk limits would still be consistent with light, but once we limit lifting to five pounds then we're really kicking ourselves into sedentary, the same range as sedentary. So, I think that once we do that, the answers for the sedentary hypothetical come into play.

Attorney: Okay. And just lastly, in regards to absences, what are the allowable amount of absences an individual may have before employability would become a problem?

VE: Well, it depends on the job. Somebody who has been an employee for a very long time, approximately six years as a work history, they may have actually paid time off that is beyond even two days per month. So, it would depend on the occupation and the job.

The ALJ then asked the VE:

> Q: Can you tell us what the typical average is, though?

VE: Well for I – what I consider for unskilled jobs is one per month as being permissible. And for highly skilled jobs it can be as much as, you know, two to three days off per month depending on what type of job it is and what kind of contract. So, highly compensated employees do many times have even more than two days a month off.

(Tr. 97-100).

## THE ALJ'S DECISION-MAKING PROCESS

"Disability" is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can last for a continuous period of not less than twelve months...." 42

U.S.C. §§ 416(I); 423(d)(1); C.F.R. § 404.1505 (2005). The impairment(s) must be severe, making the plaintiff "unable to do his previous work... or any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(1); 20 C.F.R. § 404.1505-404. 1511 (2005).

To determine whether the plaintiff is entitled to disability benefits, the ALJ must apply a five-step analysis. 20 C.F.R. § 404.1520(a)-(f). The ALJ must first determine whether the plaintiff is presently employed or engaging in substantial gainful activity. If so, a finding of non-disability is made and the inquiry ends.

Second, the ALJ must determine whether the plaintiff suffers from a severe impairment or a combination of impairments. If the plaintiff does not, then a finding of non-disability is made and the inquiry ends.

Third, the ALJ compares the plaintiff's severe impairments to those in the listings of impairments located in Appendix I to Subpart 404 of the Code of Federal Regulations. 20 C.F.R. § 404.1520 (d), Subpart P, Appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the plaintiff's ability to perform other work. Gibson v. Heckler, 762 F.2d 1516, 1518 n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. § 404.1520(d).

Fourth, the ALJ must determine whether the plaintiff has the "residual functional capacity" to perform his or her past relevant work. "Residual functional capacity" (hereinafter

"RFC") is defined as "the most you can still do despite your limitations." 20 C.F.R. §

404.1545(a)(1). This determination takes into account "all relevant evidence," including medical

evidence, the claimant's own testimony and the observations of others. Id. If the plaintiff is

unable to perform his or her past relevant work, then a prima facie case of disability is

established and the burden of proof shifts to the Commissioner to show at step five that there is

other work available in the national economy which the plaintiff can perform. 20 C.F.R. §

404.1520(e); Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991) (The claimant bears the

initial burden of proving that he is unable to perform previous work).

Fifth, if the plaintiff cannot perform his or her past relevant work, the ALJ must decide if

he or she is capable of performing any other work in the national economy.

## THE ALJ'S FINDINGS

On July 21, 2015, the ALJ found that the plaintiff was not disabled under the relevant

sections of the Social Security Act. (Tr. 56). The ALJ found that the plaintiff meets the insured

status requirements of the Social Security Act through March 31, 2018. (Tr. 49). At step one, the

ALJ found that the plaintiff has not engaged in substantial gainful activity ("SGA") since April

19, 2013, the alleged onset date. Id.

At step two, the ALJ found that the plaintiff had the following severe impairments:

lumbar disc disease, residuals of a right inguinal hernia repair; and IBS. Id. The ALJ found the

plaintiff's alleged mental impairment, adjustment disorder with a depressed mood, does not

cause more than minimal limitation in the plaintiff's ability to perform basic mental work

activities and is therefore non-severe. Id.

At step three, the ALJ found that the plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Tr. 50). The ALJ specifically stated that the plaintiff's back impairment "has not consistently met or equaled the level of severity contemplated in Section 1.04 of the listing of impairments, and her IBS has not consistently met or equated the level of severity contemplated in Section 5.00 of the listing of impairments." (Tr. 51).

At step four, the ALJ carefully considered the entire record, and found that the plaintiff has the RFC to perform the full range of light work as defined in 20 C.F.R. 404.1567(b). Id. The ALJ concluded that, while the plaintiff may experience some subjective degree of low back and abdominal pain, her symptoms are not of such severity, frequency, or duration as to preclude the performance of light work. (Tr. 53). In addition, the ALJ concluded that there was insufficient evidence to establish that her symptoms reduced her occupational base to less than light work. (Tr. 55). The ALJ found that the plaintiff's poor work history prior to the alleged onset date showed a lack of motivation to work and undermined her credibility. Id. Furthermore, the ALJ observed the plaintiff and noted that she was not in any obvious pain or discomfort when walking in or out of the hearing room, or while sitting during the course of the hearing, and that she lacked the general physical appearance of a person who might have been experiencing prolonged or sever pain. Id.

At step five, the ALJ determined that the plaintiff could perform past relevant work as a salesperson, because such work "does not require the performance of work-related activities precluded by the plaintiff's RFC (20 C.F.R. 404.1565)." Id. The ALJ found that the plaintiff is

able to perform her past relevant work as a salesperson as actually and generally performed in the national economy. Id.

## STANDARD OF REVIEW

The Court must determine if it is appropriate to grant either party's motion for summary judgment. Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g) (2006); Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996) (holding that the reviewing court must not re-weigh evidence or substitute its discretion). On judicial review, decisions made by the defendant, the Commissioner of Social Security, are conclusive if supported by substantial evidence and if the correct legal standard was applied. 42 U.S.C. § 405(g) (2006); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999). Substantial evidence is more than a scintilla, but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Substantial evidence is relevant evidence a reasonable person would accept as adequate to support the ALJ's conclusion. Richardson, 402 U.S. at 401. In determining whether substantial evidence exists, "the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).

The restrictive standard of review, however, applies only to findings of fact. No presumption of validity attaches to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims. Cornelius v. Sullivan,

936 F.2d 1143, 1145-46 (11ᵗʰ Cir. 1991) ("Commissioner's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."); Martin v. Sullivan, 894 F.2d 1520, 1529 (11ᵗʰ Cir. 1990). The reviewing court must be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. Davis v. Shalala, 985 F.2d 528, 531 (11ᵗʰ Cir. 1993). The court may not, however, decide facts anew, re-weigh evidence or substitute its judgment for that of the ALJ, and even if the evidence weighs against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. Miles v. Chater, 84 F.3d 1397, 1400 (11ᵗʰ Cir. 1996); Baker v. Sullivan, 880 F.2d 319, 321 (11ᵗʰ Cir. 1989). Factual evidence is presumed valid, but the legal standard applied is not. Martin, 894 F.2d at 1529. The Commissioner must apply the correct legal standard with sufficient reasoning to avoid reversal. Id.

## LEGAL ANALYSIS

The plaintiff challenges the ALJ's decision of March 17, 2014. (Pl. Motion for Summ. J. at 1). The plaintiff seeks reversal of the Commissioner's decision denying the plaintiff's eligibility for Social Security Disability Income Benefits under the relevant provisions of the SSA. Id. In the alternative, the plaintiff asks for a remand for further administration proceedings. Id.

The plaintiff contends that the ALJ failed to properly weigh the medical opinion evidence and failed to properly determine the plaintiff's RFC. (Pl.'s Motion for Summ. J. at 6-11). In addition, the plaintiff contends that the ALJ failed to properly evaluate the plaintiff's credibility.

(Pl.'s Motion for Summ. J. at 11-13). The undersigned finds that the ALJ's findings are substantially justified by the record and that the ALJ's decision should be affirmed. Miles, 84 F.3d at 1400; Baker, 880 F.2d at 321.

## I. SUBSTANTIAL EVIDENCE SUPPORTS THE COMMISSIONER'S DECISION THAT PLAINTIFF FAILED TO PROVE SHE WAS DISABLED

The plaintiff asserts that the ALJ erred when he weighed the medical opinion evidence. (Pl. Motion for Summ. J. at 6). The plaintiff contends that the opinions from medical sources, particularly those from treating medical sources, are critically important when determining the plaintiff's RFC, and therefore, because the ALJ erred in weighing the medical opinion evidence, the ALJ erred when determining the plaintiff's RFC. Id.

### A. THE ALJ ASSIGNED THE PROPER WEIGHT TO THE OPINION OF DR. MENENDEZ

The plaintiff contends that the ALJ erred in giving little weight to the limitations described by Dr. Menendez in his impairment questionnaire, finding that they were unsupported by any clinical or objective findings. Id. at 7. Furthermore, the plaintiff contends that the ALJ's conclusion that Dr. Menendez's opinions are not supported by any objective or clinical evidence is contradicted by the record, and that the ALJ failed to identify substantial evidence that contradicts the opinions of Dr. Menendez. Id. at 7-8.

In response, the defendant argues that the ALJ properly considered the medical evidence of record, including the medical opinion evidence, and because Dr. Menendez's opinion was not supported by his treatment notes and was inconsistent with clinical findings and diagnostic studies, the ALJ properly assigned little weight to those opinions. (Def. Motion for Summ. J. at

4-5).

In most circumstances, where the opinion of a treating source is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record, the regulations require that an ALJ give more weight to the opinion of a treating source. 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2). However, the opinion of a treating source may be given less weight when "good cause" is shown to the contrary.[9] Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011); Phillips, 357 F.3d at 1241. Additionally, the ALJ is required to "state with particularity the weight given to different medical opinions and the reasons therefor." Winschel, 631 F.3d at 1179 (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987)). When controlling weight is not accorded to the treating source opinion, the ALJ must consider: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's specialization in the medical condition at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6); 20 C.F.R. § 416.927(c)(1)-(6); Schiano v. Astrue, No. 07-61920-CIV, 2009 WL 1770152 *19 (S.D. Fla. June 23, 2009).

---

[9] "Good cause" exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004).

In this case, the ALJ accorded little weight to the opinion of Dr. Menendez. (Tr. 52). In support of this finding, the ALJ noted that the limitations imposed by Dr. Menendez were inconsistent with the balance of clinical findings and diagnostic studies. Id. Additionally, the ALJ found that the notes of Dr. Menendez did not contain collaborative signs or findings. Id. Therefore, the ALJ accorded little weight to Dr. Menendez's opinion regarding limitations. Id.

On September 23, 2013, Dr. Menendez stated that the plaintiff would be unable to work due to abdominal pain from IBS. (Tr. 52, 486). On October 18, 2013, Dr. Menendez evaluated the plaintiff's RFC. (Tr. 52, 450-57). Dr. Menendez diagnosed the plaintiff with IBS and Lumbar Degenerate Disc Disease. (Tr. 450). Dr. Menendez indicated that the plaintiff, in an eight-hour work day, could sit zero to one hour, stand and walk zero to one hour, and lift and carry up to a maximum of five pounds occasionally. (Tr. 52, 450-57). Dr. Menendez added that the plaintiff needed a job that permits shifting positions at will from sitting, standing or walking, and would need to shift positions roughly once every thirty minutes. Id. He further stated that the plaintiff should not push, pull, kneel, bend, or stoop on a sustained basis. Id. In support of these findings, Dr. Menendez listed a CT scan of the abdomen, an upper endoscopy, and an MRI of the lumbar spine. (Tr. 451). Dr. Menendez described the CT scan as "normal" and the lab report confirms the description. (Tr. 316). Moreover, the MRI of the plaintiff's lumbar spine only showed (1) a minor disc bulge L5-S1, (2) degenerate change of apophyseal joints L4-5 and L5-S1, (3) no disc herniation, significant canal encroachment or significant foraminal stenosis at the level of the lumbar spine, (4) mild degenerative changes of the left S1 joint, (5) mild to moderate atrophy of paravertebral muscles, and (6) a fibroid uterus with nonspecific free fluid in the cul-de-sac. (Tr. 311, 409). Prior to September 2013, the plaintiff met with Dr. Menendez six times beginning on

June 2012. (Tr. 366-67, 370, 373-74, 376-77, 379-80). At five of the six visits, the plaintiff

denied having back pain. Id. At four of those six visits, the plaintiff denied any abdominal pain.

Id. This evidence does not support the opinion of Dr. Menendez that the plaintiff had daily

chronic abdominal pain. (Tr. 450).

In accordance with the foregoing, the undersigned finds no error in this category, because

substantial evidence supports the ALJ's determination that the opinion of Dr. Menendez was

inconsistent with the treatment records. Crawford v. Comm'r of Soc. Sec., 363 F.3d 115, 1159-

60 (11 th Cir. 2004) (holding that the claimant is not entitled to relief when the medical records

provided by an acceptable medical source are inconsistent with findings). Moreover, because of

the inconsistencies, the ALJ had good cause to accord little weight to the opinion of Dr.

Menendez. Phillips, 357 F.3d at 1241.

## B. THE ALJ ASSIGNED THE PROPER WEIGHT TO THE OPINION OF DR. SILVA

The plaintiff contends that the ALJ erred in the amount of weight given to the opinion of

Dr. Silva. (Pl. Motion for Summ. J. at 9). In response, the defendant argues that the ALJ provided

good reasons, supported by substantial evidence, for the amount of weight given to the opinion of

Dr. Silva. (Def. Motion for Summ. J. at 10).

The ALJ "will always consider the medical opinions in [the plaintiff's] case record

together with the rest of the relevant evidence." 20 C.F.R. § 404.1527(b). Generally the ALJ is to

give more weight to the opinion of a source who has examined the plaintiff than the opinion of a

source who has not examined the plaintiff because the examining source is likely the medical

professional most able to provide a detailed, longitudinal picture of the plaintiff's medical impairment(s). 20 C.F.R. §§ 404.1527(c)(1), (c)(2). However, as explained above, the ALJ had good cause for assigning little weight to the opinion of Dr. Menendez because his medical source statements were inconsistent with his own treatment records and objective findings.

The ALJ is not required "to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician." 20 C.F.R. § 404.1527(c)(2)-(3); Denomme v. Comm'r, Soc. Sec. Admin., 518 F. App'x 875, 877 (11th Cir. 2013); McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987). Instead, the weight the ALJ affords them will vary depending on many factors, including the opinion's supportability and consistency with other evidence of record. 20 C.F.R. § 404.1527(d); Richardson v. Perales, 402 U.S. 389, 402 (1971)(stating that a licensed physician's report who has examined the claimant and who sets forth in his report his medical findings may constitute substantial evidence).

In this case, the ALJ found that Dr. Silva's opinion was consistent with the balance of evidence. (Tr. 53). First, the ALJ noted that Dr. Silva examined the plaintiff on August 21, 2013, at the request of the Agency. (Tr. 52, 444). The ALJ further noted that Dr. Silva's examination showed negative straight leg raising, normal gait, and the ability to walk on heels and toes. (Tr. 52, 446). In addition, the ALJ noted that Dr. Silva remarked upon the plaintiff's August 5, 2011, MRI of her lumbar spine and found that the MRI only showed mild degenerative changes. (Tr. 53, 444). Lastly, the ALJ noted that Dr. Silva reported that the plaintiff had an extensive workup for IBS that essentially showed normal findings, including a benign polyp. (Tr. 52-53, 444). Moreover, Dr. Silva's examination showed only a mild extension of the abdominal wall and a

non-tender abdomen. (Tr. 446). Dr. Silva also noted that the plaintiff denied diarrhea or constipation, and had daily bowel movements. (Tr. 444). Thus, substantial evidence supports the ALJ's decision regarding the amount of weight given to the opinion of Dr. Silva.

In accordance with the foregoing, the undersigned finds no error in this category, because substantial evidence supports the ALJ's determination that the opinion of Dr. Silva was consistent with the treatment records. 20 C.F.R. § 404.1527(c)(3) and 20 C.F.R. § 404.1527(c)(4).

## C. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S RFC FINDING

The plaintiff argues that the ALJ erred in relying on the opinion from Toliver. (Pl. Motion for Summ. J. at 9). The plaintiff alleges that the ALJ had the impression that A. Toliver was a "medical consultant," and not an SDM. Id. In response, the defendant contends that any misidentification of the SDM was harmless as the evidence supports an RFC finding of light work. (Def. Motion for Summ. J. at 11).

In support of the plaintiff's argument, the plaintiff cites to Siverio v. Comm'r of Soc. Sec., 461 Fed. Appx. 869 (11th Cir. 2012), which stated that the ALJ relying on the opinion of a SDM as an acceptable medical source when evaluating the claimant's RFC was not a harmless error. Siverio, 461 Fed. Appx. at 871-72. However, the Siverio case is distinguishable from this matter. The court in Siverio acknowledged that the opinion of the SDM was the only opinion that supported the ALJ's conclusion of the claimant's RFC. Id. at 872. Thus, in Siverio , it appeared that it was primarily on the basis of the SDM's RFC assessment that the ALJ concluded the claimant's RFC. Id. Here, the SDM's opinion was not the only opinion that supported the ALJ's

28

conclusion of the plaintiff's RFC. (Tr. 51-55). The ALJ stated that he considered the entire record in assessing the plaintiff's RFC. (Tr. 51). The ALJ relied on the opinions of Dr. Silva, Dr. Weinberger, Dr. Shilserlberg, and A. Toliver, as well as his own observations of the plaintiff at the administrative hearing to determine the plaintiff's RFC. (Tr. 52-55). In addition to the objective medical evidence, Dr. Silva opined that the plaintiff had no limitations and the ALJ gave his opinion weight. (Tr. 53). The ALJ ultimately gave a more restrictive RFC than Dr. Silva, which inured to the plaintiff's benefit. (Tr. 51). Affording significant weight to an SDM while affording greater weight to a more restrictive opinion from an acceptable medical source is a harmless error. Castel v. Comm'r of Soc. Sec., 355 F. App'x 260, 265 (11th Cir. 2009); Stepp v. Astrue, No. 8:11-CV-1729-T-30EAJ, 2012 WL 3542426, at *7 (M.D. Fla. July 30, 2012). Therefore, while the opinion of an SDM was not entitled to weight, the ALJ's finding was, at worst, harmless error.

Moreover, opinions on some issues, such as whether the claimant is disabled and the claimant's RFC, "are not medical opinions,... but are, instead, opinions on issue reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C. F. R. § 404.1527(d); Denomme, 518 F. App'x at 878. Thus, although physicians' opinions about what a claimant can do or the claimant's restrictions are relevant evidence, such opinions are not determinative because the ALJ has the responsibility of assessing the claimant's RFC. 20 C.F.R. § 404.1546(c); 20 C.F.R. § 404.1527(d)(2); Beegle v. Soc. Sec. Admin., Comm'r, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive").

In accordance with the foregoing, the undersigned finds that the ALJ properly considered all of the evidence in the record, including all of the medical evidence in the record, in its totality, in assessing the plaintiff's RFC, and the ALJ's RFC finding is supported by substantial evidence. 20 C. F. R. § 404.1545(a)(3). The undersigned finds that the ALJ ruled properly when determining that the plaintiff has the RFC to perform a full range of light work as defined in 20 C.F.R. § 404.1567(b) and is able to perform the demands of unskilled work that involves occasional dealing with supervisors, the public, and coworkers.

## II. THE ALJ PROPERLY EVALUATED THE PLAINTIFF'S CREDIBILITY

The plaintiff contends that the ALJ's credibility determination is not supported by substantial evidence. (Pl. Motion for Summ. J. at 12). In addition, the plaintiff contends that the ALJ erred by concluding that the plaintiff was exaggerating simply because she has not worked extensively in the past and has financial support from other sources. Id. at 13. Lastly, the plaintiff contends that the ALJ erred by relying heavily on his own observation of the plaintiff on a single day over the course of the administrative hearing. Id.

The defendant contends that the ALJ gave ample reasons for reaching his conclusion that the plaintiff's subjective complaints were not credible. (Def. Motion for Summ. J. at 14). The defendant further contends that the ALJ's articulated reasons were supported by substantial evidence for his adverse credibility determination, thus, the plaintiff's allegation that the ALJ improperly evaluated her credibility lacks merit. Id.

In determining whether a claimant is disabled, the ALJ must consider all the claimant's symptoms, including "pain, and the extent to which your symptoms can reasonably be accepted

as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529 (a).

The ALJ will consider all of the claimant's statements about her symptoms, and any description

the claimant's medical sources may provide about how the symptoms affect her activities of daily

living and her ability to work. Id. However, statements about the claimant's pain or other

symptoms will not alone establish that the claimant is disabled. Id. When a claimant attempts to

prove disability based on her subjective complaints, she must provide evidence of an underlying

medical condition and either objective medical evidence confirming the severity of her alleged

symptoms or evidence establishing that her medical condition could be reasonably expected to

give rise to her alleged symptoms. 20 C.F.R. § 404.1529(a); Wilson v. Barnhart, 284 F.3d 1219,

1225 (11th Cir. 2002); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).

"[The ALJ] will not reject [a claimant's] statements about the intensity and persistence of

[their] pain or other symptoms or about the effect [their] symptoms have on [their] ability to

work solely because the available objective medical evidence does not substantiate [the

claimant's] statements." 20 C.F.R. § 404.1529(c)(2). Because symptoms sometimes suggest a

greater severity of impairment than can be shown by objective medical evidence alone, the ALJ

will carefully consider any other information the claimant may submit about her symptoms. 20

C.F.R. § 404.1529(c)(3); Dyer v. Barnhart, 395 F.3d 1206, 1212 (11th Cir. 2005); Marcia v.

Bowen, 892 F.2d 1009, 1012 (11th Cir. 1987); Harwell v. Heckler, 735 F.2d 1292, 1293 (11th Cir.

1984). Factors relevant to the claimant's symptoms that the ALJ will consider include: (1) the

individuals's daily activities; (2) the location, duration, frequency, and intensity of the

individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4)

the type, dosage, effectiveness, and side effects of any medication the individual takes or has

taken to alleviate the pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures the individual used or has used to relieve the pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529 (c)(3)(I)-(vii); SSR 96-7p. If the ALJ discredits a claimant's testimony, he must articulate explicit and adequate reasons for doing so. Wilson v. Barnhart, 284 F.3d at 1225.

In this case, the ALJ considered the relevant evidence in assessing the plaintiff's RFC, including the plaintiff's subjective complaints and other symptoms. (Tr. 51-55). The ALJ found that the plaintiff's "impairments could reasonably be expected to cause some of the alleged symptoms," but found her statements concerning the intensity, persistence, and limiting effects of her symptoms to be not entirely credible. (Tr. 55). The ALJ found that the clinical and objective findings did not support the plaintiff's statements about her impairments. (Tr. 53).  In evaluating the plaintiff's complaints, in accordance with SSR 96-7, the ALJ noted that the plaintiff was independent in dressing, bathing and grooming. (Tr. 55). The ALJ also noted that the plaintiff had little or no recent treatment despite her allegations of severe pain and disabling IBS. Id. Furthermore, the ALJ found that the plaintiff's poor work history prior to the alleged onset date shows a lack of motivation to work and undermines her credibility. Id. Additionally, the ALJ observed the plaintiff and noted that she was not in any obvious pain or discomfort when walking in or out of the hearing room, or while sitting during the course of the hearing, and that she lacked the general physical appearance of a person who might have been experiencing prolonged or sever pain. Id.

The plaintiff contends that the fact that she is able to perform some activities of daily living for short periods of time is not inconsistent with her allegations of disability. (Pl. Motion for Summ. J. at 12). Although not dispositive, a claimant's activities may show that the claimant's symptoms are not as limiting as alleged. 20 C.F.R. § 404.1529 (c)(3)(I); SSR 96-7p; Dyer, 395 F.3d at 1212; Harwell, 735 F.2d at 1293. In support of the argument, the plaintiff cites to Lewis v. Callahan, 125 F.3d 1436 (11th Cir. 1997), in which the court found that they did not believe that "participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability or is inconsistent with the limitations recommended by [the claimant]'s treating physicians." Lewis, 125 F.3d at 1441. However, in the instant case the ALJ did not unduly rely on the plaintiff's everyday activities in deciding her claim, nor did the ALJ find that the plaintiff's everyday activities were dispositive evidence of her ability to work. (Tr. 55). As stated above, among other things, the ALJ took into account that the plaintiff regularly travels back and forth from New York to Florida. Id. The ALJ concluded that her ability to regularly make those long distance trips was inconsistent with her alleged functional limitations. Id. Additionally, the ALJ carefully observed the plaintiff and noted she was not in any obvious pain or discomfort when walking into the hearing room or sitting during the hearing. Id. The ALJ properly considered the plaintiff's activities together with other evidence.  20 C.F.R. § 404.1529 (c)(3)(I)-(vii); SSR 96-7p; Dyer, 395 F.3d at 1212; Harwell, 735 F.2d at 1293.

The plaintiff also contends that the ALJ erred by concluding that she was exaggerating simply because she has not worked extensively in the past and has financial support from other sources. (Pl. Motion for Summ. J. at 13). The ALJ is to consider all of the evidence presented, including information about the claimant's prior work record. 20 C.F.R. § 416.929(c)(3).

33

Moreover, the ALJ is specifically instructed that credibility determinations should take into account, as one of many factors, a claimant's "prior work record and efforts to work." SSR 96–7p; 61 Fed.Reg. 34,483, at 34,486 (1996); Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998). A poor work history may be probative evidence regarding the credibility of a claimant's allegations. Schaal, 134 F.3d at 502. However, a poor work history may be consistent with a claimant's disability claim. Id.

Both the plaintiff and defendant cite to the Schaal case to support their argument. Ultimately, the court in Schaal concluded that " the ALJ did not commit legal error by taking account of plaintiff's limited work history as one factor in assessing the credibility of her testimony regarding her symptoms." Id. at 503. Similarly, in this case, the ALJ considered the plaintiff's prior work history as one of many factors in order to reach his conclusion on the plaintiff's credibility. Therefore, because the plaintiff's work history was not the sole factor in determining her credibility, no error was made.

Lastly, the plaintiff contends that the ALJ engaged in "sit and squirm" jurisprudence. (Pl. Motion for Summ. J. At 13). The phrase known as "sit and squirm jurisprudence" is defined as an approach wherein "an ALJ, who is not a medical expert, will subjectively arrive at an index of traits which he expects the claimant to manifest at the hearing. If the claimant falls short of the index, the claim is denied." Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982). The Eleventh Circuit has repeatedly condemned sit and squirm jurisprudence as an improper basis for determining a claimant's disability. McRoberts v. Bowen, 841 F.2d 1077, 1081 (11th Cir. 1988); Johns v. Bowen, 821 F.2d 551, 557 (11th Cir. 1987); Norris v. Heckler, 760 F.2d 1154, 1158.

However, this does not prohibit an ALJ from considering the claimant's appearance and demeanor during the hearing. Norris, 760 F.2d at1158 (11th Cir. 1985). Rather, an ALJ may consider a claimant's demeanor among other criteria in making credibility determinations. Id. The ALJ must not impose his observations of the claimant in lieu of consideration of the claimant's objective medical evidence. Id.

The plaintiff's argument lacks merit because the ALJ did not base his credibility assessment solely on the plaintiff's appearance and demeanor at the administrative hearing. As discussed above, the ALJ considered other factors when assessing the plaintiff's credibility. (Tr. 54-55).

In accordance with the foregoing, the undersigned finds no error in this category, because substantial evidence supports the ALJ's determination of the plaintiff's credibility. Dyer, 395 F.3d at 1212. Moreover, the ALJ articulated reasons supported by substantial evidence for his adverse credibility determination. Werner v. Comm'r of Soc. Sec., 421 F. App'x 935, 938 (11th Cir. 2011).

## RULING

In accordance with the foregoing, it is

**ORDERED AND ADJUDGED** that the decision of the Commissioner is **AFFIRMED**, the Plaintiff's Motion for Summary Judgment and Memorandum of Law in Support Thereof (DE#22, 11/18/2016)  is **DENIED**, and the Defendant's Motion for Summary Judgment with

Supporting Memorandum of Law and Response to Plaintiff's Motion for Summary Judgment

(DE#25, 12/19/2016) is **GRANTED** in accordance with this Order.

DONE AND ORDERED at the United States Courthouse, Miami, Florida this 30th day of

June, 2017.

_____

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
All counsel of record